# FOR PUBLICATION



**FILED**
Jul 11 2014, 6:09 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Deputies Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) | |
| Z.C., Minor Child, | ) ) | |
| S.C., Mother, | ) ) | |
|     Appellants-Respondents, | ) ) | |
|        vs. | ) ) | No. 33A01-1310-JT-434 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
|     Appellee-Petitioner. | ) ) | |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Mary G. Willis, Judge
Cause No. 33C01-1306-JT-13

**July 11, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

S.C. ("Mother") appeals a termination of her parental rights to her son, Z.C. ("Child"). She asserts the trial court proceedings denied her due process and the evidence is insufficient to support termination of her rights. We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 6, 2012, Child was born with controlled substances in his bloodstream. Mother admitted using heroin, morphine, Xanax, and Oxycontin. Due to the severe withdrawal symptoms he was experiencing, Child remained hospitalized for a number of weeks. Prior to Child's release, Mother was arrested on federal drug charges and incarcerated in Kentucky. Because Mother was incarcerated, the State obtained an emergency order to take custody of Child on August 22, 2012, when he was released from the hospital.

In September 2012, the court held a hearing on the State's petition to declare Child a child in need of services ("CHINS"). Mother admitted she was unable to take care of Child because of her incarceration and because, when released from incarceration, she would need "services to address her substance abuse." (DCS Ex. 13.) The court declared Child a CHINS. One month later, the court entered a dispositional order requiring Mother to complete a number of services following her release from incarceration.

On May 23, 2013, the court modified its dispositional order to indicate unification efforts between Mother and Child were ending because Mother had not participated in services or developed a relationship with Child. (DCS Ex. 16, 24.) In August 2013, the court approved a permanency plan calling for termination of parental rights. The State filed a

2

petition to terminate Mother's rights on June 24, 2013, and the court held a hearing thereon.

Thereafter, the court entered an order that included the following pertinent findings:

25. Mother never had Child in her exclusive care or custody, nor has she had contact with the Child since the Child's detention [by DCS]. Mother is not able to care properly for Child due to her incarceration.

26. Mother has remained incarcerated in the State of Kentucky since August 22, 2012 and has an unknown release date. Mother's current incarceration is the result of federal charges for conspiracy to deal heroin conspiracy [sic] to which she has admitted guilt through a plea agreement.

27. Attorney Howard Bernstein represents Mother in her pending federal criminal case. He states that Mother has pled guilty in the heroin conspiracy case and is currently facing a minimum ten-year sentence. Mr. Bernstein believes Mother may be able to renegotiate her sentence for a lesser time period of between 18 months and ten years but the sentencing date and term of incarceration are unknown.

28. Mother has a lengthy adult criminal history beginning in 2001 that includes convictions for Illegal Consumption on three occasions, Criminal Mischief, Theft, Possession of Marijuana, Visiting a Common Nuisance, felony Possession of Cocaine, felony Possession of Schedule IV Controlled Substance with a habitual substance offender enhancement, Operating While Intoxicated, and Conversion. Mother is facing an additional Operating While Intoxicated charge.

29. Mother was nine months pregnant with the Child at the time she committed the federal drug offense for which she is currently incarcerated.

30. Mother admitted to [family case manager] Hoffman that she had used illegal and non-prescribed controlled substances daily during her pregnancy with the Child. Mother's drug use during pregnancy included consumption of marijuana, suboxone, hydrocodone, morphine and heroin.

31. Mother admitted to FCM Hoffman that her drug abuse began at the age of twelve years and that her longest period of sobriety was one year in 2007, despite having received substance abuse treatment intervention on six occasions.

32. Mother has one older child, age 16 years, who is in the informal guardianship care of the child's maternal grandmother although Mother has never been the primary physical custodian living alternately with her mother, various partners and incarcerated intermittently during her adult life.

33. Mother objects to the DCS plan of adoption and that the originally designated maternal relatives have bonded with the child, love the child, and desire to become the permanent parents for the child. Mother

3

proposed that the child be placed with her Mother (maternal grandmother) on a similar informal guardianship basis as her older 16 year old child until some unknown time when she may be released from federal incarceration or, alternately, that the newly named Father, Michael Kendall, being given [sic] an opportunity to "get on his feet" upon release from incarceration and introduced to the child.

34. Mother misrepresented the identity of the putative father to the Court and DCS from August, 2012 to April, 2013 because Father was incarcerated at the time DCS initiated its assessment and she thought it would "look worse on her" in the assessment if she named a man who was incarcerated as the Child's father. Alleged Father was residing in the Mother's home at the time of assessment and is a named co-conspirator in the heroin case. Alleged Father purported himself to be the father in court proceedings when he was aware that it was not possible for him to be the child's biological father. Mother continued to misrepresent the identity of the father in correspondence to the Court.

35. Mother used heroin days before the birth of the Child and while the Child was hospitalized.

36. DCS' plan for Child is that he be adopted; this plan is satisfactory for Child's care and treatment and an adoptive family has been identified as the family he has resided with continuously since he release [sic] from the hospital following his recovery from drug withdrawal symptoms.

37. Child has been in the same relative care family since detention on August 23, 2012. The child is very bonded with the prospective adoptive parents, Mr. and Mrs. Jones, and they are willing to adopt Child.

38. The Child's CASA is supportive of the plan of termination of parental rights and believes it is in the Child's best interests to be adopted by Mr. and Mrs. Jones with whom the Child has a close bond.

39. DCS believes it is in the best interests of the child to be adopted due to the inability of the Mother and Father to provide appropriate care for the Child.

(Appellant's App. at 19-21.) Based thereon, the court concluded there was a reasonable probability the conditions resulting in Child's removal would not be remedied and the continuation of the parent-child posed a threat to Child's well-being. The court also concluded termination of rights was in Child's best interests and the State had a satisfactory plan for Child's future care and treatment and, therefore, the court terminated Mother's

4

parental rights.

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied, cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not

5

be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

> To terminate a parent-child relationship:
>
> (2) The petition must allege:
> > (A) that one (1) of the following is true:
> > > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> > > (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> > > (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
> > (B) that one (1) of the following is true:
> > > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> > > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> > > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> > (C) that termination is in the best interests of the child; and
> > (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must prove these allegations by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, the court must terminate the parent-child relationship.

Ind. Code § 31-35-2-8.

The trial court concluded there was a reasonable probability the conditions resulting in Child's removal would not be remedied and the continuation of the parent-child relationship posed a threat to Child's well-being. Because our legislature wrote subsection (B) in the disjunctive, stating only one of those three circumstances needed to exist, the trial court needed to find only one of the three established by clear and convincing evidence before terminating parental rights. *See In re L.S.*, 717 N.E.2d at 209. Accordingly, we may affirm the trial court's decision if the evidence and findings support the court's determination as to the existence of one of those circumstances. *See id.* (finding supporting conclusion that one circumstance listed under Ind. Code § 31-35-2-4(b)(2)(B) is sufficient to affirm termination of parental rights).

We review first the finding the conditions that resulted in Child's removal would not be remedied. In making such a determination, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The court must evaluate a parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The trial court may also properly consider, as evidence

7

of whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. *Id.* A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

Here, the Record indicated Child came into the State's custody because Mother was arrested on drug charges before Child was released from hospitalization for drug withdrawal symptoms. Mother admitted Child was a CHINS because she was incarcerated and would need substance abuse treatment when released. At the termination hearing, Mother's criminal defense counsel testified Mother had agreed to plead guilty to conspiracy to deal heroin and her minimum sentence would be ten years. Counsel testified that he hoped to renegotiate Mother's plea agreement but at the time of the termination hearing, Mother's sentencing date and the length of her sentence remained unknown. That evidence supports the conclusion the conditions that resulted in Child's removal from Mother's custody would not be remedied. *See In re L.S.*, 717 N.E.2d at 208 (appellate court must affirm trial court decision if evidence supports facts that lead to the conclusions of law).

Mother also asserts the court should not have concluded the reasons for Child's placement outside her care would not be remedied because the court's participation order instructed her that to keep rights over Child, she "needed to participate in services upon her release from incarceration." (Appellant's Br. at 10.) However, at the time termination proceedings commenced on May 31, 2013, the services offered to Mother as part of Child's

8

CHINS adjudication ceased. Therefore, we are unable to address the alleged inadequacy of services offered to Mother during the CHINS proceeding because that issue is unavailable during an appeal following termination of parental rights. *See In re H.L.*, 915 N.E.2d 145, 148 n. 3 (Ind. Ct. App. 2009) ("failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law").

Mother claims the same arguments demonstrate the court erred when determining the termination of her rights would not be in Child's best interests. We cannot agree. As the court found, both DCS and Child's CASA believed termination of Mother's rights was in Child's best interests. The testimony of such individuals supports the court's findings and conclusion. *See In re L.S.*, 717 N.E.2d at 208 (appellate court must affirm trial court decision if evidence supports facts that lead to the conclusions of law).

Finally, Mother asserts a number of "procedural irregularities as to Father . . . violated her due process rights to family integrity." (Appellant's Br. at 16.) We decline to find a due process violation, as it was Mother who misled the court regarding Father's true identity for over six months, because she was concerned that his status as a prisoner might have a negative impact on her ability to maintain her own parental rights. Moreover, Mother cannot assert error in the termination of her rights based on an alleged denial of due process to Father. *See Rumple v. Bloomington Hospital*, 422 N.E.2d 1309, 1314 (Ind. Ct. App. 1981) (litigants are normally barred "from asserting the rights or legal interests of others in order to obtain relief from injury themselves.") (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)), *trans. denied*.

9

Mother's arguments are an invitation for us to reweigh the evidence, which we cannot do.  *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge credibility of witnesses).  DCS presented sufficient evidence that the conditions under which Child was removed from Mother's care would not be remedied and that termination was in Child's best interests.  Accordingly, we affirm.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.